```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS

JOHN D. HORTON,                    )
                                   )
                 Plaintiff,        )
                                   )
v.                                 )    No.  06-1363-MLB
                                   )
LARNED STATE HOSPITAL,             )
                                   )
                 Defendant.        )
                                   )
```

## MEMORANDUM AND ORDER

Before the court are the following:

1. Plaintiff's complaint (Doc. 1);

2. Plaintiff's application to proceed *in forma pauperis* (Doc. 3);

3. U.S. Magistrate Judge Donald W. Bostwick's Report and Recommendation of denial of IFP status (Doc. 4); and

4. Plaintiff's objection (Doc. 5).

The court has conducted a de novo review of the file, overrules plaintiff's objection and adopts Magistrate Judge Bostwick's order.

### Background

Plaintiff claims to be an Hispanic male over the age of 40 with a master's degree in library science. Plaintiff filed this case on December 7, 2006. He asserts that he was wrongfully terminated from his employment as a librarian at the Larned State Mental Hospital, in part because of the events alleged in another case now pending before the undersigned judge, Horton v. Bristol, et al., Case No. 06-1219:[1]

> On May 8, 2006 the complaint was ordered to attend a meeting of the Central Kansas Library System being held in Osborne, Kansas, regarding library computer applications. During the course of his trip (120 miles from Larned, Kansas) the complainant was lynched by members of the Ku Klux Klan for being a colored person in white man's territory. The Klan entered the meeting of the Central Kansas Library System and ordered the

complainant out of the Osborne Public Library building and over to the Osborne Police Department for the lynching. The complainant was then verbally abused and harassed and physically intimidated by two members of the Ku Klux Klan for being colored and having entered the whites-only Osborn Public Library. Members of the Klan took the complainant's driver's license and state government business carded. The Ku Klux Klan ordered the complainant out of town immediately if he knew what was good for him. Members of the Ku Klux Klan than wrote letters and telephoned the complainant's employer stating that the complainant had no business being in a white man's town, had no business being in the white man's library or attending a meeting where the white man's women were also in attendance. The Klan complained to Larned State Hospital management that the complainant had been uppity, mouthy and disrespectful to them in their capacity as the protectors and defenders of white civilization on the high plains of Kansas.

On June 8, 2006, a meeting regarding the Osborne lynching was held between the complainant and management (Kenyon, Caplinger and Adel Dunn as the superintendent's representative). Dunn denounced the complainant for being a worthless nigger and for having failed to properly submit to the lynching and having embarrassed the superintendent by his uppity nigger behavior and attitudes toward the Ku Klux Klan in Osborne, Kansas. The three individuals told the nigger Horton that that were going to give him a week to stew while they figured out how to punish the uppity nigger for having failed to behave properly during the lynching.

On June 8, 2006, at 10:OO a.m. a meeting was held between the nigger Horton and management (Kenyon and Caplinger) where the Horton was informed that as punishment for having offended the Ku Klux Klan in Osborne, Kansas, the nigger Horton was going to have his probationary period extended from six months to 12 months. Meeting adjurned.

On June 8, 2006, at 2:00 p.m. the nigger Horton was ordered by the Human Resources Office (i.e. Adel Dunn) to report to their location for a secret reason (they refused to tell the nigger Horton what they wanted). At the appointed time the nigger Horton arrived at the Human Resources Office and was immediately surrounded, threatened, assaulted, harassed and menaced by four of the employer's security police. The nigger Horton was then presented with a letter of termination which was effective immediately and failed to state any reason for the termination. No explanation was provided by the Ku Klux Klan-loving employer as to what had happed between

10:OO a.m. and 2:00 p.m. to justify his termination. Doc. 1 at 5-7 (spelling and punctuation errors in original).

Under this court's random assignment system, the case was assigned to Magistrate Judge Bostwick who reviewed plaintiff's application for leave to proceed *in forma pauperis* and made the report and recommendation about which plaintiff complains. In response, plaintiff filed a fifteen page objection on various grounds, including stare decisis, law of the case doctrine, due process and equal protection.[2] Plaintiff's objection cites numerous cases, although none from the Tenth Circuit. Plaintiff does not dispute the accuracy of Magistrate Judge Bostwick's factual findings, nor does he quarrel with the Tenth Circuit and District of Kansas authority cited by Magistrate Judge Bostwick.

## Discussion

Leave to proceed *in forma pauperis* is a privilege granted by statute, Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987) and Weaver v. Toombs, 948 F.2d 1004, 1008 (6th Cir. 1991). It is not a right, constitutional or otherwise. The fact that plaintiff may have been permitted leave to proceed *in forma pauperis* in other cases in this court does not invoke the "law of the case doctrine" nor the policy of stare decisis. Each case stands on its own.

A plaintiff does not have to be destitute in order to qualify for *in forma pauperis* status. However, a plaintiff who has some ability to pay a filing fee is "merely in the position of having to weigh the financial constraints imposed if he pursues [his position] against the merits of his case." Sears Roebuck & Co. V. C.W. Sears Real Estate, 686 Fed. Supp. 385, 388 (N.D. N.Y. 1988), aff'd, 865 F.2d

-3-

22 (2nd Cir. 1988).  <u>See</u> <u>also</u> <u>Brewer v. Overland Park Police Dept.</u>, 24 Fed. Appx. 977 (10th Cir. 2002) (denying leave to appeal *in forma pauperis* when the appellant's monthly income exceeded his expenses by "a few hundred dollars").  Unlike many plaintiffs who seek and are granted *in forma pauperis* status, plaintiff is not a prisoner.  According to his complaint, plaintiff is well educated.  He is employed and employable.  His income is not great, but he has no monthly expenses and no debts.  It is not unreasonable for plaintiff to decide whether the merits of his case justify the initial investment of a $350 filing fee.  After all, if plaintiff elects to pursue his case, the costs to defendant will be considerable, even if plaintiff ultimately is not successful.[3]  Moreover, should the case go forward to a trial, plaintiff will have to travel to Kansas and pay all expenses relating to his attendance at trial.  If plaintiff should lose, he may be required to pay fees and costs, even if he had been initially granted *in forma pauperis* status.  <u>Olson v. Coleman</u>, 997 F.2d 726, 728 (10th Cir. 1993).  In other words, a plaintiff who is allowed to file his case without <u>prepayment</u> of fees and costs does not receive a free ride throughout the rest of the case.

Conclusion

Accordingly, Magistrate Judge Bostwick's Report and Recommendation is adopted in its entirety.  Plaintiff shall have 30 days to pay the full filing fee.  If the fee is not paid, this case shall be dismissed without further notice.

A copy of this order shall be forwarded to the parties in Case No. 06-1219.

IT IS SO ORDERED.

Dated this __5th__ day of February 2007, at Wichita, Kansas.


S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

1. On November 16, 2006, plaintiff filed <u>Horton v. Bristol, et al.</u>, Case No. 06-1219. Leave to proceed *in forma pauperis* was granted by one of the magistrate judges (not Magistrate Judge Bostwick) and that case is now before this court on dispositive motions. Plaintiff's description of the facts as they relate to the claims in this case are as follows:

> In June of 2006 the plaintiff attended a librarians conference sponsored by the Central Kansas Library Association which was to be held in Osborne, Kansas. The plaintiff had great trepidation about attending this meeting because he knew that the Ku Klux Klan was active in this area and that niggers such as the plaintiff were likely to by lynched by the Klan since the Klan in this part of Kansas had actively assisted Timothy McVeigh and Terry Nichols in blowing up the federal building in Oklahoma City.
>
> While traveling to Osborne to attend the librarians meeting, Klansman Snook began stalking and following the plaintiff 20 miles outside of Osborne. Once the plaintiff reached his destination at the Osborne Public Library, Klansman Snook notified Klansman Bristol that a nigger had entered the Osborne Public Library and was probably raping the white women. Bristol immediately responded to the Osborne Public Library and forced the nigger Horton outside of the building demanding to know who he was and what he was doing in cracker-town Osborne. Bristol then forced the nigger Horton to be confronted by Klansman Snook who verbally abuse and assaulted the nigger Horton. Bristol then wrongfully demand and received from the nigger Horton a copy of the nigger's driver's license and state government business card. Klansman Bristol then eventually wrongfully provide this information to Klansman Snook.
>
> Klansman Snook then wrongfully provided this information to his mother. Mother Snook then wrote and anti-nigger hate letter which was addressed to the Schutter complaining about the nigger Horton traveling through

> whitey country in Osborne County. Based on Klansman
> Schutter's desire to maintain solidarity and cohesiveness
> with the larger Klan in Kansas, Schutter ordered that the
> nigger Horton be wrongfully terminated as part of a
> conspiracy of the all the defendant's herein to lynch the
> nigger Horton.
>
> Subsequent to the anti-nigger lynching, the plaintiff
> contacted defendant Miner and attempted to file a criminal
> complaint against Bristol and Snook but eventually came to
> an understanding through defendant Miner's inaction that
> criminal complaints by niggers against white people are not
> allowed in Osborne County. Specifically, that Bristol and
> Snook had entered into a conspiracy with Miner such that
> Miner would refuse to investigate the lynching of the
> nigger Horton as a favor to his fellow Klan buddies,
> Bristol and Snook.

Doc. 71 at 1-3 (footnotes omitted; spelling and punctuation errors in original).

Case No. 06-1219 was preceded by <u>Horton v. United States</u>, Case No. 06-01226 filed August 1, 2006. Plaintiff alleged that while employed as a librarian at Fort Bragg, North Carolina, he was ". . . kidnapped by agents of the defendant while plaintiff was at Fort Bragg, wrongfully transported to Polk Air Force Base, North Carolina, lynched and torture [sic] there for a period of eight hours . . ." after which he was wrongfully imprisoned in county jails. Plaintiff's application for leave to proceed *in forma pauperis* was granted by one of the magistrate judges (not Magistrate Judge Bostwick) but another district judge transferred that case to the United States District Court for the Eastern District of North Carolina.

2.  Plaintiff's point seems to be that because he was permitted to proceed *in forma pauperis* in two earlier cases, he is automatically entitled to the same privilege in this case. In the two prior cases, plaintiff's affidavits showed that he was unemployed with monthly rent and other obligations. In his affidavit in this case, plaintiff claims to have monthly income and no monthly obligations other than $200 for groceries.

3.  The Supreme Court has recognized ". . . the problems in judicial administration caused by the surfeit of meritless *in forma pauperis* complaints in the federal courts, not the least of which is the possibility that meritorious complaints will receive inadequate attention or be difficult to identify amidst the overwhelming number of meritless complaints." <u>Neitzke v. Williams</u>, 490 U.S. 319, 104 L.Ed.2d 338, 109 S. Ct. 1827, 1832 (1989). While the court has not

yet made a determination regarding whether this case, if continued after plaintiff pays a filing fee, may be subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) or (ii), it nevertheless has an obligation to make sure that a plaintiff who seeks the benefit of free access to this court meets the qualifications for that benefit.